Mr. Chief Justice, and may it please the Court. The Court of Appeals held that Arizona v. Fulminante was the clearly established federal law that controlled and governed the outcome of this case. This was an error because this Court has never applied Fulminante's direct-appeal harmless-error standard, which places the burden of proof on the government, to a collateral ineffective assistance-of-counsel claim, where the burden of proof is on the inmate, and where, unlike Fulminante, there is no trial transcript to review because the defendant pleaded no contest or guilty before trial. The Court of Appeals' decision conflicts with both Strickland v. Washington and Hill v. Lockhart, and will have grave negative consequences for our criminal justice system. Ginsburg. But isn't Fulminante relevant just for the proposition that a defendant's own confession carries heavy weight, leaving out the rest of it, the statement that, in Fulminante, that when a defendant confesses to the crime, that carries heavy weight? Yes, Your Honor. I think it's relevant to that extent, that a confession from a defendant is significant evidence. However, it certainly does not imply, as the Court of Appeals proceeded to do here, that it controls the prejudice prong of Strickland, that it sets a new standard of review of harmlessness, that it shifts the burden of proof on to the government, or that it limits the prejudice analysis to that question of the potential impact of the confession at trial. And so for all those reasons, I think the Court of Appeals has gone well beyond any potential relevance of the Fulminante decision. Sotomayor, if I'm understanding your argument, it is that the Court erred in assuming that if the confession had been suppressed, which you're not arguing for or against – I'm assuming you're not taking Eurimekas's position that we have to get to the question of what would have happened in a motion to suppress – but that under all circumstances, if there's a suppressible confession, a defendant should never plead guilty. You're saying that that conclusion is what the Ninth Circuit drew and that was wrong. Your Honor, we're suggesting that the Court was wrong both in stating Fulminante provided the standard of review, as well as holding that you can affect assumed prejudice simply because defense counsel failed to file a motion which defense counsel believed would not. Sotomayor, so another way of saying what I said, which is no defendant should plead guilty. That is correct, Your Honor. If there's a suppressible confession. That is correct, Your Honor. Sotomayor, so now what's the other information that would have made a pleading guilty in this case inevitable? Although that's a higher standard than you need to meet. As Your Honor noted, that is a much higher standard than we have to meet under Hill v. Lockhart. There were very good reasons why defense counsel's advice to this defendant to plead guilty was a sound and reasonable advice. First of all, the defendant faced a very strong government case, even at that stage of the investigation. Second, there was a potential charge of aggravated murder that could be brought if the case were taken to the grand jury. Third, the plea offer that was extended to the defendant in which the defendant took was very favorable to the defendant, both in terms of capping the amount of time that the defendant would serve, as well as dismissing two additional mandatory minimum charges of assault and kidnapping. So we're those higher than the minimum he pled to? Were those mandatory minimums higher? No, Your Honor, but they could have been run consecutive rather than concurrent. I think more significant is the fact that when the defendant himself testified about the reasons he pled guilty, none of the reasons he provided had anything to do with the strength of the government's case or the failure of counsel to file the motion. What the defendant said motivated his guilty plea was a concern about an aggravated murder charge, a desire not to have to testify against his brother, which he believed would be the outcome of a guilty plea. And those factors were in the defendant's mind when he decided to take the guilty plea. So in this case, even if one were to shift the burden onto the government, and I do not believe that that is consistent with Strickland, the government would prevail here. This case raises, I think, significant consequences for application of Strickland and Hill v. Lockhart. Strickland and Hill clearly placed the burden of proof in a collateral proceeding on the inmate. The court of appeals here shifted the burden of proof pursuant to Fulminante onto the government. One can see this in the Petition Appendix at page 48, where the court states that there's not enough evidence in the record to prove that the defendant would have pled guilty had the confession been denied. As I stated to Justice Sotomayor, I believe the government actually could meet that burden, but that is certainly not the burden that either Strickland or Hill requires. Second, the Court's application of Fulminante transforms the Hill v. Lockhart analysis. It narrows it to one degree because it's focused on one issue, what the government's evidence would be at trial, rather than looking at the broad array of issues which might motivate a defendant to plead guilty, which the courts will look at under Hill v. Lockhart. For example, under Hill v. Lockhart, the Court will not only look at the defendant's testimony with respect to the estimate of the strength of the government's case, but also look at the potential for an additional sentence that is higher or additional charges that carry a higher sentence if the defendant proceeds with litigation rather than pleading guilty. It will look at the investigation risk that additional evidence would be found if the case continued rather than terminating in an early plea, and will look at personal factors as the ones that were evident in this case that might motivate a guilty plea. For those reasons, the Hill v. Lockhart standard encompasses a broader array of factors in determining whether there is prejudice than a simple application of Fulminante's direct appeal post-trial standard. It is also the case that the application of Fulminante will substantially increase the amount of speculation which courts have to engage in compared with applying the proper Hill v. Lockhart test. Hill v. Lockhart limits the amount of speculation by focusing on the defendant's motive in pleading guilty and whether the ineffective assistance could have influenced that decision to plead guilty. Ginsburg. What about Judge Berzon's test? That seems to be simple and a matter of common sense, that if you get rid of the confession, then you have a better chance of getting a good deal in the plea bargain. I mean, the confession certainly disturbs the defendant. You get rid of that, there's one less weight on the prosecution's side. Your Honor, I would say two things. First, the test which is proposed by Judge Berzon in the concurrence has never been recognized or promulgated by this Court. So in a collateral proceeding pursuant to 28 U.S. Code 2254, it would not be clearly established law that the State court was required to follow. And second, application of that standard, as Judge Bybee noted in his concurrence, would require an immense amount of speculation. In this case, the majority in the Ninth Circuit hypothesized that filing the motion to suppress the confession would strengthen the defendant's position in negotiating vis-a-vis the government. It is also very possible, however, that the government would respond to filing a motion as opposed to taking an early offer of guilty plea by taking the case to the grand jury, seeking an aggravated murder charge, and thus putting the defendant in a worse position in the case. And that, as Judge Bybee noted, he questioned whether the courts have the proper tools to be able to speculate years after the guilty plea whether a particular motion may have increased or may have decreased the amount of leverage that a defendant has, or what kind of response that that motion might have drawn from the prosecution. Breyer, I mean, what's the alternative? I mean, imagine a case where it's clear there was a malpractice or inadequate assistance. It happened a long time ago, and now you have to decide, well, was it prejudicial or not? It's prejudicial if in the absence of that he would have gone to trial or wouldn't have pleaded guilty or — and what's the alternative to trying to figure out whether that's so? Your Honor, it can't be the State always wins and it can't be the defendant always wins. So what's the alternative? I think the alternative, Your Honor, is application of Hill v. Lockhart, which looks not at speculation about how this could or could not have affected the plea bargaining process, but looks very concretely at the defendant's pretrial decisionmaking process and examines the record to determine why the defendant pled guilty and whether they can prove with a reasonable probability that he would not have pled guilty. Oh, but that is, isn't that identify — I'm sorry, maybe we're just quibbling. I don't quite see it. That would seem to me to be going into the plea bargaining process. Would he have pleaded guilty? What would have happened? I think the difference, Your Honor, is that when you're applying Hill v. Lockhart, you almost always have at least three very concrete pieces of evidence to show the defendant's state of mind. You have the defendant's own testimony or deposition, or in this case both. You have the trial counsel's affidavit or testimony about the decisionmaking process his client engaged in. And then you have the guilty plea colloquy itself. So you always have a concrete record that the Court years later can review in order to determine what motivated the decision to plead guilty. If one were applying Judge Berzon's proposed alternative prejudice finding, one would  I presume have defense counsel and the government make claims about what they might have done in response to hypotheticals, which does not seem to me a reasonably justiciable standard. As a — Sotomayor, without any confession, forget about the brother or the girlfriend, assume that there had been no confession, wouldn't it have been a fair conclusion to draw that without any confession whatsoever that the plea bargaining strength of the defendant in this case would have been appreciably higher and that the prosecutor would have had to offer something lower? Your Honor, if none of the three confessions had been made. None of the three whatsoever. I mean, the brother's confession or the confession to the brother is a very big piece of why a plea would have been reasonable in this case. Let's assume no confession. Your Honor, I still think a taking — recommending a guilty plea and taking of a guilty plea would be a rational response to the remaining evidence. Even at this early stage in the proceeding, the police had uncovered certainly the body with the direct shot to the temple. It had recovered the murder weapon. It had recovered the car which the defendants had borrowed and which had blood in the trunk where the victim had been locked and transported. They had four witnesses who were present when the plan to kidnap and assault the victim was hatched. So they would have testified very directly about the forming of the plot. There was an eyewitness who identified the defendant, Mr. Moore, at the trailer where the victim was abducted. And then, of course, there was a co-conspirator, Mr. Sawyer, who was cooperating with the government prior to the confession and whose cooperation was known to the defendant. So with all of those pieces, even if one stripped the three confessions out of the case, you would still have a situation where the government's case was strong, where there was a very severe risk the government would go to the grand jury and obtain an aggravated murder charge, and where there were significant advantages to pleaing early and locking in a lower sentence to a felony murder charge. Ginsburg. Mr. Kroger, from the general program, from everything you said, I take it that and from your brief, too, that you are not urging the that that counsel's assistance was adequate. You're not contesting that the confession was involuntary. You seem to be putting everything on the prejudice issue. Is that right? No, Your Honor. We concede and forfeited the issue that the motion to suppress would have been meritorious, but believe the district court got it right when it held that on both prongs of Strickland, both on deficient performance and on prejudice, the defendant has failed to make his burden of proof. I think the prejudice argument here is extraordinarily strong, but I think the deficient performance, even if one concedes that the motion would have been meritorious, the deficient performance prong is strong as well, because the defendant can't meet his burden of proof that defense counsel's representation was unreasonable given the strength of the government's case, given the quality of the plea offer that was made, and given the defendant's own reasoning of the defense counsel's plea offer for why he pled guilty. The case has significant practical consequences for the criminal justice system. One is that if the Ninth Circuit's opinion stands, it will be much easier to challenge guilty pleas years after the fact on collateral challenge, and this will undercut the principle of finality. One would certainly expect to see fewer government plea offers in cases like this if the government believed years later it would have to present all of its trial evidence in a collateral proceeding in order to rebut the presumption under Fulminante that there was prejudice. Second, it has severe implications for the freedom of defense counsel to exercise its discretion and represent its client using the wide latitude that Strickland recognized was necessary. Strickland itself stated that it's a mistake to hem in defense counsel with strict rules about what should or should not be done because defense counsel needs that wide latitude. If there is a virtual presumption that motions to suppress must be filed, even where defense counsel reasonably believes it will not redound to the advantage of his client and may cost the client a chance to plea early, the defense counsel must take that option. It's a severe restriction on their freedom. If he had gone to trial, what's the sentence, what's the range of sentence he could have got? Your Honor, if he had gone to trial on the charges that were pending, and these were not charges from the grand jury, he would have faced at least the mandatory minimum of 25 years that he pled guilty to, plus the potential of additional an additional sentence both on that charge, perhaps as high as life, given the two other potential mandatory minimum sentences of kidnapping and assault that could be brought. And if they had gone back to the grand jury, as the prosecutor, I guess, could have done, right? He could have gone to the grand jury. This case had pled guilty before, Your Honor, yes. He could have gone to the grand jury. Then what's the maximum he could have got? It could have been a capital case, Your Honor. This could have been an aggravated murder case because the facts involved a very severe beating to the extent perhaps of torture, where a defendant who was very vulnerable who had a protruding hernia that was in a truss was savagely beaten, his nose was broken, and he was locked in the trunk of a car, taken to a remote location, and shot in the temple with one shot of a revolver. It's distinctly possible that the case would have come from the grand jury as a capital case, at very least could have been an aggravated murder carrying a life sentence, not a 25-year sentence. Ginsburg. What of the his argument that, well, his, Salyer, the other defendant in a case arising out of this episode, that Salyer did go to trial and he ended up getting the exact same sentence that this defendant did? Yes, Your Honor. Mr. Salyer did receive the same sentence after he went to trial. His case, though, was very different from that of the Petitioner, because the Petitioner was the individual who cocked the pistol and fired the round into the head of the victim killing him. And so it is very unlikely that the other two co-conspirators would have found themselves charged with an intentional murder based on the facts of the case. But because this pistol could only be fired if it were cocked, and because the round went into the temple, it would have been a reasonably strong aggravated murder case against this defendant, who was the triggerman. The final point I would like to make to the Court is that this case involves or should involve significant deference to the State court decision. This was not a summary denial by the State court. The State court held a hearing at which it received all testimony that was available. It made very explicit findings of fact about the facts in the case. It made a credibility finding about the evidence that had been submitted by the Petitioner, and it ruled, after citing the proper Strickland standard, that the defendant had failed to carry his burden of proof. Kennedy, it's a little hard when we take away the finding that the confession was admissible. We have to extract that. Your Honor, even if you I'm not quite sure what to do with the State court's case, assuming we have to presume, because of the posture of the case, that the confession was inadmissible. Your Honor, I would say two things with respect to that. First of all, the State court's decision, even if it were incorrect in its ruling that the confession would not have been admissible, the State court's conclusion that the motion would not have assisted the defendant in any way, the finding that it was or would have been fruitless because of the other confessions, the other two confessions in the case, is a reasonable decision that the court made and is dispositive, and thus, under AEDPA, should receive deference. I would also suggest the case is somewhat similar to that of Yarborough v. Alvarado. There, there was a custody issue at stake, and this Court explicitly held that one might come out one way or the other on the custody issue, that reasonable jurists might split, but that that fact alone rendered the State court's opinion on voluntariness or on custody in that issue reasonable. And again, as here, though we are not asserting that this confession was admissible, should the court consider it, it's clearly a close question on voluntariness and somewhat factually similar to Yarborough, where even if the State court was wrong, it still was a reasonable adjudication of the claim. If there are no further questions from the Court, Your Honor, I would like to reserve the remainder of my time for rebuttal. Roberts. Thank you, counsel. Mr. Wax. Mr. Chief Justice, and may it please the Court. Mr. Moore established prejudice under Hill from his attorney's failure to recognize the involuntariness and inadmissibility of the lengthy tape-recorded statement obtained from him by the police, the most critical type of evidence that the State can have in any case. The Ninth Circuit's conclusion to that effect was correct and was correctly based on this Court's precedents of Strickland, Hill, and Kimmelman. Sotomayor I'm having a little bit of trouble here with your argument for the following reason. Assume we suppress the confession. Why is it unreasonable for the defense attorney to have concluded that the evidence showing your client's presence at the shooting and identification as the shooter, that it was so weak that he should have gone to trial on a defense that he wasn't involved in the shooting at all? Once you've put him in this shooting, then the only issue he seems to be confused about is that he thinks that because it was accidental, that that presents a defense to felony murder. And that's clearly an erroneous position on his part. So what made the case so weak that the government was never going without the confession to prove felony murder? Well, Your Honor, we believe that the case is not, as the State would have it, a strong case in the absence of this confession. We also believe that the proper focus is not solely on the strength of the State's case, and that under Hill it is necessary to look at the totality of the circumstances and look for the objective factors in this record that inform the decision of what Mr. Moore would have done or would have been likely to have done in the absence of his counsel's statement. Alito, what does your office do in this situation? A client is indicted in Federal court, and you anticipate that there are all sorts of motions that you might make if this case is going to trial. But at an early point, the prosecution offers you what looks like a really good plea bargain. Now, do you litigate all of those motions? If you have a chance of winning, of suppressing some statements that your client made, suppressing physical evidence, getting certain evidence excluded with a motion in limine, maybe you could win on a severance motion, you think you litigate all of those rather than grabbing a good plea deal when it's offered to you? Your Honor, the answer is certainly no, we do not litigate all of the motions. So if you take the deal, then it's later, you want it later to be open to the defendant if he's not, you know, after the defendant spent some time in jail, he's not too happy with the deal anymore, he can now come back and say, well, you know, the Federal Public Defender's Office was ineffective because they could have moved to suppress my confession and the illegal search, et cetera, et cetera, et cetera. That's all open for re-litigation years later? No, Your Honor. No? And the issue here is not, as we have attempted to articulate in our brief solely, and in the abstract, the failure to file the motion.  If I, or an assistant in my office, says to the client, look, there is a strong motion to suppress the confession, the drugs, what have you, but here are other factors that we should look at, and at the conclusion, and with that proper advice, the client decides I will take the deal, then I have performed effectively and the case is not one that can be subject to a collateral attack, as this case is. Sotomayor, what would have been the defense absent the confession? You had one at trial on the confession suppressing it. How would he have defended this case? Your Honor, he would have been able to defend this case first by articulating the government's obligation to prove his guilt beyond a reasonable doubt. You take out the confession, and you posited in your questioning of Attorney General Kroger that the strength of his brother's confession is a given. We respectfully disagree. The brother, Raymond, is a policeman. Sotomayor, what motive would his brother have had to put him at the scene of the shooting as the accidental killer? That's all his brother would have had to say. He was at the scene, he accidentally – this gun went accidentally off. The brother is a police informant. The brother describes himself in the deposition. Excuse me, the testimony. His brother had no pending charges against him at the time. That is true, Your Honor, but the police had used him as their agent. So what does that have to do with what interest does his brother have when he has no pending charges against him at the time? He's going to use this as a future chip in case he does something wrong? Your Honor, the point is that he is the brother into jail for 25 years? This is illogical. If he were to appear and testify, which is one of the points that I believe the Ninth Circuit properly pointed out, that Mr. Moore, knowing his brother, might have had every confidence that his brother. Breyer, see, that's the trouble. We have a lot of evidence, I think, here, at least my first glance, that a lot of evidence he shot the guy. A lot of evidence he carried kidnapped him, right? And now that – maybe it was accidental, but if it was accidental, it's still felony murder, and he received through the plea bargaining the minimum sentence he could get for that. You started out by saying that the State court's conclusion that this was not prejudicial was clearly wrong. All right. If it's clearly wrong, what is it so clear that he could get off if he went to trial? Your Honor, I will respond to the second part, but I believe there is a premise in which you said that we reject. There is no State court finding under Hill, and there is no deference. There is no State court finding that this was not prejudicial? The court never reached the Hill question. I'm not talking about Hill. I don't know the names of the cases associated. I thought that the court in the State court said that I might be wrong. I'd like to know, made a finding that, one, this was not ineffective assistance of counsel, and, two, it was not prejudicial. I haven't read this very thoroughly, so you yet, and so you tell me if I'm wrong about that. At pages 205 and 206 in the appendix, in the findings of fact and conclusions of law, there are 11 findings of fact. In one of those findings of fact, in findings of fact 8 and 9, the State court used the word fruitless in describing the motion to suppress. In the conclusions of law, the State court solely addressed Strickland. And nowhere in the analysis is there any reference to the question of what Mr. Moore would have done. Doesn't Strickland require that it be prejudicial? Yes, of course. However, the analysis that was undertaken here never reached the question of what Mr. Moore would have done. Breyer. If I assume that the word fruitless and the reference to Strickland were a finding, that this is not prejudicial, if I assume that for the sake of argument for the moment, what is it you can show that shows it was prejudicial? Your Honor, what I can say is that this is the same question I think Justice Sotomayor started with. There is no question that the evidence with respect to the strength of the State's case includes the facts that the Attorney General has identified. There is also, as we perceive it, no question but that the objective record shows that the brother's testimony would have been highly impeachable based on his prior work as an informant, his description of himself as a prisoner. Sotomayor, in particular, how, what motive did he have to implicate his brother? You still haven't answered that question. All you keep saying is he was a past cooperator, he had no pending charges, and now he has a motive to do this against his brother because of that? Your Honor, I cannot point in the record to a motive. What I can point to is the fact that there is in the record his self-description of himself as the golden boy for the police, his working with the same detectives who interrogated his brother years before when he completely avoided a murder charge. And as a defense attorney, in a case involving a group of men who are not necessarily as socialized and well-educated as some other group, that his testimony would have been subject to impeachment. Even without his testimony, isn't there a very strong case of kidnapping? Let's just take it step by step. What would have been the defense to the kidnapping charge? The defense to the kidnapping charge, in the absence of the confessions, could well have been a mere presence defense that Mr. Moore did not participate in the kidnapping. He had every right to put the State to its burden of proof. He didn't go to the victim's RV with the other men? That would have been the defense? He could certainly have argued that he did not participate in the kidnapping. He's there, he's in the car, and he had no participation in it. But what I believe is being missed in this discussion, if I may, is the focus on the question required to be analyzed in Hill. Would Mr. Moore have gone to trial? Would he have accepted the plea? And on that, there are highly unusual cases. Ginsburg. Mr. Waxman, just to clear out some of the underbrush, the Ninth Circuit did say that the clearly established law controlling this case, I take it that you are not defending that. That is correct. The clearly established law that governs here is Strickland, Hill, and Kimmelman. I've got on the other, I've got on the reason I asked the question, to be clear about it, is that he wouldn't have gone to trial, in my mind, unless he had a pretty good chance of getting a better deal, like getting off. And what he got was the minimum. Okay. One thing I've written down is that the State would not have the confession. That's correct. Number two is he could say this brother is not a very good brother. Moreover, he's a rather dubious character here, and bring all that stuff. Was there anything else? Yes, Your Honor. I just don't want to miss anything. What we have in this record is a highly unusual combination of four facts appearing at three different stages of the proceeding. First, from his attorney, who articulated this in the sentencing, it's in the supplemental appendix at page 7. Mr. Moore had a very difficult time accepting the fact that this was a felony murder charge or a felony murder offer. That leads directly to the fact that Mr. Moore did not plead guilty. This is only a no-low plea. And while in some circumstances the Court will equate a no-low plea with a plea of guilty, in these circumstances, the fact that he entered a no-low plea only is highly significant on the question of whether or not he would have rolled the dice. Sotomayor, an incompetent counsel is supposed to accept their irrational client who doesn't want to understand the law and let him risk getting an aggravated felony charge brought against him or a capital murder charge brought against him and not go ahead and try the case because he's not going to recommend to the client go to trial, take the plea because you're irrational. That's really what you're saying, that a competent attorney would not recommend to his client take the plea and that his client wouldn't ultimately accept the plea because in the objective reality, his upside is horrible and his downside is almost a given. Your Honor, a competent counsel might advise his client to accept a plea. The question of the irrational client is, however, one with which I regrettably deal on a regular basis. Clients do not always accept my advice. And for whatever it is worth, in the footnote toward the end of his opinion, Judge Reinhart responds to Judge Bybee by saying, look, he may not be better off by pursuing this habeas corpus action. It is, however, his choice. Scalia. But Judge Reinhart and the court of appeals did not in fact apply the test of Hill, which you're asserting, the test is whether he would have gone to trial. I didn't read the opinion as ever saying that he would have gone to trial. The opinion says he could have gotten a better deal. That's quite a different question and I'm not prepared to make that the test. That is not the test that Hill prescribed. I am not advocating for the test articulated by Judge Berzon. I believe that it is a sound approach, but it is not what we are advocating for here. We believe that this record shows that Mr. Moore would have gone to trial. Did he say that? Is there a statement in the record that Moore said he would have insisted on going to trial had he been advised that the suppression motion had merit? You have to just say. There is no direct statement to that effect. In all the cases that we have found where there is such a direct statement, the Court's almost always discounted. What we have here, we submit, is something more significant, and that is he did not want to enter a plea, he did not enter a plea, and then at the first opportunity that he learned that his attorney had been ineffective, he moved to undo the conviction. And we submit that the decision in Roe v. Flores-Ortega, in which this Court found it highly significant that Flores-Ortega moved to initiate an appeal at the first opportunity that he learned that the appeal had been lost, is applicable here. That is an objective fact that this Court has found relevant, and that we must do. Breyer, I don't see how we can go back into the possible irrational state of mind. I mean, don't, when you are trying to figure out what a defendant would have done in the absence of an error in respect to a plea, don't you have to ask the question, what would a rational person have done? I mean, that's a good question. I don't know the answer. But if we are trying to figure out he might have been totally irrational and would have gone to trial even though he was likely to end up in jail for life as opposed to 25 years, we should then reverse it and give him a trial? I'm rather disturbed by that idea. Your Honor, I am not suggesting that the attorney's decision in Roe v. Flores-Ortega was a reasonable decision. I believe that Mr. Moore was making a reasoned judgment. His co-defendant brother, who brought the gun to the scene, who by the confessions is the one who pistol-whipped the victim, received the 10-year manslaughter sentence that Mr. Moore believed he should have obtained. Mr. Salyer, who went to trial, received the same sentence that Mr. Moore received. Mr. Moore's judgment that this should be viewed as an accident and that it was a highly mitigated situation. But I think General Kroger brought out that Moore carried the gun, it was cops, and he shot, was it Roger? Your Honor, the gun is brought to the scene, and this is in the record, by the co-defendant Lonnie Wilhyser. He has the gun when he goes into the trailer and assaults Mr. Rogers. What the district attorney said, the prosecutor on the scene who understood what was happening, the prosecutor's description at pages 227 and 228 of the appendix is, this is an accident. The prosecutor states they had no intent to kill. The sole intent here was to put the fear of God into Mr. Rogers for his having ripped off his friend, Mr. Salyer. The prosecutor describes the incident on the hill as follows, that Mr. Wilhyser, with the gun, is pushing Mr. Rogers up the hill. This is a wet and muddy Oregon day and a wet and muddy Oregon hill, and Mr. Rogers and Mr. Wilhyser go down. Excuse me, what was the citation to this? Pages 227 and 228 in the appendix, and he also reiterates the facts in the sentencing, which I believe is at two at page 3 and 4, the sentencing proceeding in our supplemental appendix. They believe it. The jury believes it was an accident. Now, how does that get him a lighter sentence? If he goes to trial, the likelihood, first, of a death penalty needs to be off the table. Breyer, 25 years' story for felony murder. Now, the jury believes just what you said. It believes that it was an accident. He never intended to pull the trigger. How does that get him a lighter sentence? That was my question. If he is convicted solely of the kidnapping, if he is convicted of an assault, he can receive a lighter sentence. If he is convicted of the felony murder, to be sure, the mandatory sentence is off the table. Isn't kidnapping a felony? Yes, but if he is convicted of the kidnapping and there was an accidental murder that took place, I believe that that would be felony murder, wouldn't it? If the jury finds him guilty of that, his sentence will be off the table. And the defense to kidnapping was what? Mere presence. He could have argued a mere presence defense.  Sotomayor, after four witnesses put him at the scene to kidnap this guy and scare him to death. Well, Your Honor, the record shows that there was one witness who put him at the scene. The record shows that one of the issues that was previously raised and that in our winnowing of the issues is not currently before this Court is a challenge to the admissibility of the eyewitness identification at the Rogers trailer. One witness there only, and that would be subject to challenge and does not put him into the trailer or participating in the kidnapping or the assault. Mr. Wax, as far as the confession is concerned and its excludability, what effect do you think we ought to give to this passage in the Defendant's agreement? To the plea, I understand that any admissions, statements, or confessions which I may have made, or any evidence obtained by virtue of a search and seizure of my property, may well be inadmissible against me in evidence, unless my constitutional rights have been safeguarded. I understand that if I would like to speak to an attorney concerning my constitutional rights that the Court will grant me time for that purpose. I believe you should give no credit to that, because that statement by Mr. Moore is based on the incorrect advice of his attorney, and we believe that the record here in Congress. Scalia, this is not the attorney speaking. I mean, this is what he said. He said, I understand that any admissions, statements, or confessions which I have made may well be inadmissible against me in evidence. Your Honor, he had previously been told by his attorney that they were not. And when he was questioned in the post-conviction proceeding, the fourth point of the prejudice under Hill, he says, I acted and entered this NOLO plea on the advice of counsel. Now, to be sure, there is a boilerplate statement to the contrary. Scalia, the boilerplate, I mean, the man signed it, and how can a prosecutor ever protect himself against the person who signs a plea agreement later, later coming in and saying, oh, you know, my attorney misadvised me? I don't care what your attorney advised you, the plea agreement itself advises you that this stuff may be inadmissible. Your Honor, what Mr. Moore has said is, I entered this plea on the advice of my attorney. That advice is conceded by the State to have been incorrect. And the full record of the case includes that plea petition document. It includes the State's concession that the advice provided was incorrect. And while a plea petition form is standard in many State courts, as it is in the Federal Court, the reality is that those forms often include statements that are not consistent with the facts that have been presented or that have occurred previously. Alito, could I just clarify something? Is it your position that the prosecutor in making his offer of proof at the plea on 227 to 228 affirmatively said that this was an accident or did not, did not allow the defendant to allege that it was intentional? He affirmatively states that there was no intent to kill. Where is that? I believe that is on page 228, where he comes back in and says one more thing. It is on 228. And just something that I missed early on, the indicated intent of the defendants was to instill fear to the point that the victim would not again rip them off. The description of the defendant's claim was that there was no intent to kill. Yes, sir. And I believe that is also consistent with the statement of the judge at the sentencing who described this as a case involving two tragedies. Everyone who participated, the lawyers for the defendants, the prosecutor, and the judge, recognized this was an accident, this was a tragedy. The judge saying, Mr. Moore, the person who had led a good law-abiding life, the person who had been a productive member of the community. I have to say I think that's a very aggressive reading of what was said here. It was not necessary for the plea to this offense to prove an intent to kill. And a statement that the intent that was necessary, which is a lesser intent but sufficient to support this plea, was present is not a statement that a greater mens rea was absent. And I thought you argued to us that the prosecutor said this was not intentional, it was an accident. Well, I believe, Your Honor, that is the portion of the record to which I'm referring that page 228. He also described at the sentencing the facts of the case as facts involving and consistent with the slip and the fall. His description of the incident is a description of Mr. Rogers falling back into the gun. He did that both at the plea, which I believe is on page 227, and he did it again at the sentencing. And then he is followed by the judge who articulates the circumstances of this case as involving two tragedies, to be sure, the death of Mr. Rogers, but also the tragedy of Mr. Moore having accidentally killed his friend. If there are no further questions, I thank the Court. Thank you, counsel. General Kroger, you have eight minutes remaining. Mr. Chief Justice, and may it please the Court. The court of appeals here did not apply clearly established Federal law, but applied for the first time in a way that is not mandated by the decisions of this Court, fulminante, to a collateral proceeding. The State court's adjudication of this claim was eminently reasonable on both prongs of Strickland. And accordingly, we would ask this Court to reverse the judgment of the Ninth Circuit and to affirm the judgment of the district court. I'd be happy to answer any additional questions the Court may have. Thank you, counsel. Counsel, the case is submitted.